IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| TRINITY VALLEY SCHOOL, RALL PROPERTIES, L.P., RALL OIL & GAS, L.P., FINE LINE DIVERSIFIED VENTURES, L.P., EDWARD P. BASS, PAUL B. MCKINNEY, MARY BARNES MCKINNEY SWIFT, WILLIAM W. MCKINNEY, JR., DARCY LEE KNAPP FRICKS, SHELLEY LYNN KNAPP, SANDRA GAIL KNAPP, JAMES CHRISTOPHER KNAPP, RICHARD CRENSHAW RALL, OLIVE GREENWALD, MARGARET R. JOLLEY, BLAIR ELIZABETH MCGROARTY, JESSICA SIMUS BARR, JASON BOAZ SIMUS, KATHLEEN RALL, THOMAS MALCOLM RALL, JANIS ESTELLE SWENSON, RAYMOND E. LINDAMOOD, and RAYMOND LADD LINDAMOOD, | § § § § § § § § § § § § § § § § § § § § § § § | |
| Plaintiffs, | § § | |
| v. | § § | Civil Action No._____ |
| CHESAPEAKE OPERATING, INC., CHESAPEAKE EXPLORATION, L.L.C. as successor by merger to CHESAPEAKE EXPLORATION, L.P., | § § § § § § | |
| Defendants. | § | JURY TRIAL DEMANDED |

## PLAINTIFFS' ORIGINAL COMPLAINT

Trinity Valley School, Rall Properties, L.P., Rall Oil & Gas, L.P., Fine Line Diversified

Ventures, L.P., Edward P. Bass, Paul B. McKinney, Mary Barnes McKinney Swift, William W.

McKinney, Jr., Darcy Lee Knapp Fricks, Shelley Lynn Knapp, Sandra Gail Knapp, James

Christopher Knapp, Richard Crenshaw Rall, Olive Greenwald, Margaret R. Jolley, Blair

Elizabeth McGroarty, Jessica Simus Barr, Jason Boaz Simus, Kathleen Rall, Thomas Malcolm

Rall, Janis Estelle Swenson, Raymond E. Lindamood, and Raymond Ladd Lindamood, (collectively, plaintiffs) file this complaint against Chesapeake Operating, Inc. and Chesapeake Exploration, L.L.C., as successor by merger to Chesapeake Exploration, L.P. (collectively, Chesapeake) for damages, equitable relief, declaratory relief, and attorney's fees regarding royalty and override underpayments.

## I.      NEED FOR ACTION

1.      Plaintiffs hold royalty interests and overrides under oil and gas leases and assignments for certain wells in Johnson County and Tarrant County. In violation of its express and/or implied duties to plaintiffs, Chesapeake, acting as lessee and operator, has underpaid royalty and override payments whether by basing its payments on below-agreed prices or by effectively deducting from plaintiffs' royalties and overrides contractually forbidden production and post-production costs, such as well maintenance, gas gathering and transportation, separation and treating, and other services. Such underpayments violate the express language of the relevant leases and assignments, each of which forbid most, if not all, deductions that Chesapeake has made and continues to make; additionally or alternatively, Chesapeake's actions to circumvent its express obligations violate the relevant leases' and assignments' implied covenants.

2.      Plaintiffs seek the protection of this Court (a) to obtain complete production, pricing, sales, and services information, so that plaintiffs can quantify the full extent of Chesapeake's underpayments, (b) to recover the deficiency in Chesapeake's royalty and override payments, and (c) to obtain both a declaration and determination on the application of the relevant leases and assignments and all other appropriate relief.

## II.  PARTIES

3.      Trinity Valley School (Trinity Valley) is a non-profit corporation organized under Texas law with its principal place of business in Texas.

4.      Rall Properties, L.P. is a Texas limited partnership. None of Rall Properties' partners have, or are comprised of individuals or entities with, Oklahoma citizenship.

5.      Rall Oil & Gas, L.P. is a Texas limited partnership. None of Rall Oil & Gas's partners have, or are comprised of individuals or entities with, Oklahoma citizenship.

6.      Fine Line Diversified Ventures, L.P. (Fine Line) is a Texas limited partnership. None of Fine Line's partners have, or are comprised of individuals or entities with, Oklahoma citizenship.

7.      Edward P. Bass is an individual and a Texas resident.

8.      Paul B. McKinney is an individual and a Texas resident.

9.      Mary Barnes McKinney Swift is an individual and a Texas resident.

10.     William W. McKinney is an individual and an Oregon resident.

11.     Darcy Lee Knapp Fricks is an individual and a Texas resident.

12.     Shelley Lynn Knapp is an individual and a Texas resident.

13.     Sandra Gail Knapp is an individual and a Texas resident.

14.     James Christopher Knapp is an individual and a Texas resident.

15.     Richard Crenshaw Rall is an individual and a Texas resident.

16.     Olive Greenwald is an individual and a North Carolina resident.

17.     Margaret R. Jolley is an individual and a Nebraska resident.

18.     Blair Elizabeth McGroarty is an individual and a Colorado resident.

19.     Jessica Simus Barr is an individual and a North Carolina resident.

20.     Jason Boaz Simus is an individual and a Texas resident.

21.     Kathleen Rall is an individual and a Virginia resident.

22.     Thomas Malcolm Rall is an individual and a Texas resident.

23.     Janis Estelle Swenson is an individual and an Arizona resident.

24.     Raymond E. Lindamood is an individual and a Texas resident.

25.     Raymond Ladd Lindamood is an individual and a Texas resident.

26.     Chesapeake Operating, Inc. is a corporation organized under Oklahoma law with its principal place of business in Oklahoma. Chesapeake Operating, Inc. may receive service of process through CT Corporation System, 350 North St. Paul Street, Suite 2900, Dallas, Texas 75201-4234.

27.     Chesapeake Exploration, L.L.C. is a successor by merger to Chesapeake Exploration, L.P. Chesapeake Exploration L.L.C. is a limited liability company organized under Oklahoma law. Chesapeake Exploration, L.L.C. is made up of three members, Chesapeake Operating, Inc. (discussed above), Chesapeake E&P Holding Corporation, and Chesapeake Appalachia, L.L.C. Chesapeake E&P Holding Corp. is a corporation organized under Oklahoma law with its principal place of business in Oklahoma. Chesapeake Appalachia, L.L.C. is a limited liability company with Chesapeake Energy Corporation as its sole member. Chesapeake Energy Corporation is a corporation organized under Oklahoma law with its principal place of business in Oklahoma. On information and belief, none of Chesapeake Exploration, L.L.C.'s members or partners has, or are comprised of individuals or entities with, citizenship of Texas, Oregon, North Carolina, Nebraska, Colorado, Virginia, or Arizona. Chesapeake Exploration, L.L.C. may receive service of process through CT Corporation System, 350 North St. Paul Street, Suite 2900, Dallas, Texas 75201-4234.

### III.    JURISDICTION AND VENUE

28.     This Court has subject matter jurisdiction over this action in accordance with 28 U.S.C. § 1332 because the matter in controversy exceeds $75,000, exclusive of interest and costs, and is between citizens of different states.

29.     This Court has personal jurisdiction over each defendant because each defendant purposefully availed itself of the privilege of engaging in activities in Texas. Each defendant actively conducts business in Texas.

30.     Venue is proper in this judicial district under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in Johnson County and Tarrant County, Texas.

### IV.    FACTS

**Winscott royalties and overrides**

31.     Taken together, Edward P. Bass, Paul B. McKinney, Mary Barnes McKinney Swift, William W. McKinney, Jr., Darcy Lee Knapp Fricks, Shelley Lynn Knapp, Sandra Gail Knapp, James Christopher Knapp, Richard Crenshaw Rall, Olive Greenwald, Margaret R. Jolley, Blair Elizabeth McGroarty, Jessica Simus Barr, Jason Boaz Simus, Kathleen Rall, Thomas Malcolm Rall, Janis Estelle Swenson, Raymond E. Lindamood, and Raymond Ladd Lindamood (collectively, the Winscott owners), own 100% of the mineral interests across roughly 3290 acres contained within the land depicted in Exhibit A.

32.     Through a series of oil & gas leases (the Winscott leases), the Winscott owners leased those mineral interests to Fine Line. Each one of the Winscott leases provide the Winscott owners a 25% royalty share of the minerals produced from the land associated with the Winscott leases.

33.     Fine Line assigned the Winscott leases to Chesapeake Exploration, L.P., which later became Chesapeake Exploration, L.L.C. (Chesapeake Exploration). In the assignment, Fine Line excepted and reserved a 2.5% overriding royalty interest for the minerals attributable all of to the Winscott owners other than Edward P. Bass. At present, Chesapeake Exploration stands as the lessee on each of the Winscott leases.

**Rall Ranch royalties and overrides**

34.     The Rall Ranch Unit is a 660-acre unit operated by Chesapeake Operating.

35.     Rall Properties owns 100% of the mineral interests across roughly 81 acres contained within the Rall Ranch Unit as depicted in Exhibit B. Rall Properties leased those mineral interests to Four Sevens Resources Co., Ltd. (Four Sevens). The Rall Properties lease provides Rall Properties a 25% royalty share of the minerals produced from the land associated with the Rall Properties lease.

36.     Trinity Valley owns 100% of the mineral interests across roughly 74 acres contained within the Rall Ranch Unit as depicted in Exhibit B. Trinity Valley leased those mineral interests to Rall Oil & Gas. The Trinity Valley lease provides Trinity Valley a 25% royalty share of the minerals produced from its mineral interests.

37.     A group of residential and commercial owners own 100% of the mineral interests across at least roughly 500 acres contained within the Rall Ranch Unit as depicted in Exhibit B. The residential and commercial owners are not plaintiffs to this suit. These residential and commercial owners leased their mineral interests to Rall Oil & Gas. Most, if not all, of the residential and commercial owners' leases provide the residential and commercial owners a 25% royalty share of the minerals produced from the land associated with the residential and commercial owners' leases.

38.    In September 2007, Rall Oil & Gas assigned the Trinity Valley lease and residential and small-business owners' leases (collectively, the assigned Rall Ranch leases) to Four Sevens. In the assignment, Rall Oil & Gas reserved an overriding royalty interest equal to the difference between the existing lease burden from the assigned Rall Ranch leases and 25%. Four Sevens also granted and assigned to Rall Oil & Gas an additional overriding royalty interest equal to 3% of the minerals produced and saved from all wells drilled on a drillsite located on Rall Properties' land.

39.    Four Sevens later assigned the Rall Properties lease, the Trinity Valley lease, and the residential and commercial owners' leases to Chesapeake Exploration. Chesapeake Exploration now stands as the lessee on each of these leases.

40.    All wells drilled on the Rall Ranch Unit were drilled from the drillsite located on Rall Properties' land, making all production from the Rall Ranch Unit subject to Rall Oil & Gas's 3% override.

**"No deduction" leases**

41.    The Winscott leases, the Rall Properties lease, and the Trinity Valley lease each forbid the lessee from deducting, either directly or indirectly, "any part of the costs or expenses of production, gathering, dehydration, compression, transportation, manufacturing, processing, treating, or marketing of the oil or gas or components thereof or associated minerals."

42.    These leases require the lessor to bear its pro rata share of certain expenses (not to exceed $0.75 per Mcf) under certain conditions. But, at all relevant periods, those conditions did not exist.

43.    For example, the Winscott leases, the Rall Properties lease, and the Trinity Valley lease each require, among other requirements, that any such post-production costs are "actually

incurred by [Chesapeake Exploration] for the purpose of making the oil and gas produced [under the relevant leases] ready for sale or use or to move such production to market" before any part of the expense may be borne by the Winscott owners, Rall Properties, and Trinity Valley. But, on information and belief, Chesapeake Exploration did not actually incur any post-production expenses "for the purpose of making the oil and gas produced [under the relevant leases] ready for sale or use or to move such production to market."

44. Any payment by Chesapeake to any lessor under these leases that reflects, either directly or indirectly, "any part of the costs or expenses of production, gathering, dehydration, compression, transportation, manufacturing, processing, treating, or marketing of the oil or gas or components thereof or associated minerals" violates any such lease.

45. Chesapeake has made payments to the Winscott owners, Rall Properties, and Trinity Valley that reflect, either directly or indirectly, part, if not all, "of the costs or expenses of production, gathering, dehydration, compression, transportation, manufacturing, processing, treating, or marketing of the oil or gas or components thereof or associated minerals" from the Winscott leases, the Rall Properties lease, and the Trinity Valley lease.

46. Chesapeake, directly or indirectly, has imposed on the Winscott owners, Rall Properties, and Trinity Valley more than $0.75 per Mcf in costs of treating, dehydrating, compressing, processing, and transporting.

47. Chesapeake, directly or indirectly, has imposed on the Winscott owners, Rall Properties, and Trinity Valley the costs of treating, dehydrating, compressing, processing, and transporting even though such postproduction costs were not: (i) charged at arms-length by an entity unaffiliated with Chesapeake; (ii) actually incurred by Chesapeake for the purpose of making the oil and gas produced ready for sale or use or to move such production to market; or

(iii) are incurred by Chesapeake at a location off of the lands covered by the Winscott leases, the Rall Properties lease, and the Trinity Valley lease.

**No gas-processing charges**

48.     The Winscott leases, the Rall Properties lease, and the Trinity Valley lease each require the lessee to separate natural gas liquids, whether by processing plant or by field separator, from gas produced from the relevant lands. The Winscott leases, the Rall Properties lease, and the Trinity Valley lease each obligate the lessee to provide the processing/separation services "free of all costs" to the relevant lessor. The Winscott leases, the Rall Properties lease, and the Trinity Valley lease each require the lessee to deliver to such lessor the lessor's royalty share of any collected natural gas liquids "free of all costs" at the outlet of such processing/separation location as well as the lessor's share of the residue gas.

49.     Any payment or delivery of natural gas liquids or residue gas by Chesapeake to any lessor under these leases that reflects any less than the lessor's full royalty share of any natural gas liquid or residue gas violates any such lease. And any payment or delivery of natural gas liquids or residue gas by Chesapeake to any lessor under these leases that reflects any cost of any processing/separation process violates any such lease.

50.     On information and belief, Chesapeake has paid the Winscott owners, Rall Properties, and Trinity Valley less than the lessor's full royalty share of natural gas liquid or residue gas produced from the relevant lands. On information and belief, Chesapeake has imposed on the Winscott owners, Rall Properties, and Trinity Valley the costs of processing/separation processes used on the production from the respective lands.

**"No deduction" overrides**

51.     Both the overriding royalty held by Fine Line and the overriding royalty held by Rall Oil & Gas call for payment of the applicable override royalty percentage "without cost, free and clear of all exploration, development, transportation, compression, treating, processing, marketing and operating expenses and all other liabilities, liens and encumbrances." Both overriding royalties, however, provide that such royalty payments "shall bear [their] proportionate share of applicable severance, production, or other taxes assessed against and chargeable to same."

52.     Any payment by Chesapeake to Fine Line or Rall Oil & Gas with respect to their respective overriding royalty that reflects, either directly or indirectly, charges for "exploration, development, transportation, compression, treating, processing, marketing and operating expenses and all other liabilities, liens and encumbrances" violates the respective assignment.

53.     Chesapeake, directly or indirectly, has imposed on both Fine Line's and Rall Oil & Gas's overriding royalty payments charges for "exploration, development, transportation, compression, treating, processing, marketing and operating expenses and all other liabilities, liens and encumbrances." Such charges exceed the relevant overriding royalty percentage's "proportionate share of applicable severance, production, or other taxes assessed against and chargeable to same."

**Market value for sales of oil or liquid or liquefiable hydrocarbons**

54.     The Winscott leases, the Rall Properties lease, and the Trinity Valley lease each establish a method to calculate market value of oil or liquid or liquefiable hydrocarbons produced from the relevant lands for the purpose of computing royalties. In all cases, these leases provide that, if actual sales of oil or liquid or liquefiable hydrocarbons produced from the

relevant lands meet certain criteria, those actual sales will set the market value (for the purpose of computing royalties).

55.    If any actual sale fails to meet the listed criteria, the Winscott leases, the Rall Properties lease, and the Trinity Valley lease each set the market value (for the purpose of computing royalties) of oil or liquid or liquefiable hydrocarbons produced from the relevant lands by calculating "the arithmetical average of the two highest prices then being paid for such substance or a substance of like kind and quality in Tarrant County, State of Texas by purchasers regularly engaged in the purchase of such substance."

56.    Where the arithmetical average method of calculating market value applies to the sale of oil or liquid or liquefiable hydrocarbons produced from the relevant lands, the Winscott leases, the Rall Properties lease, and the Trinity Valley lease each provide that, to the extent "prices used in determining market value . . . are under contracts or arrangements making deduction for any of the expenses of production, gathering, dehydration, compressing, transporting, manufacturing, processing, treating or marketing of such oil, liquid or liquefiable hydrocarbons or gas, then such deduction shall be added back into the prices for the purposes of calculating market value for the payment of royalties to the end that Lessor's royalty shall not be charged directly or indirectly with any such expenses, except as expressly provided in this Lease."

57.    On information and belief, none of Chesapeake Exploration's actual sales of oil or liquid or liquefiable hydrocarbons produced from the relevant lands meet the criteria listed in the Winscott leases, the Rall Properties lease, and the Trinity Valley lease for deeming the sale price the market value (for the purpose of computing royalties).

a.      On information and belief, Chesapeake Exploration has not sold and does not sell Chesapeake Exploration's share of oil or liquid or liquefiable hydrocarbons produced from the relevant lands on a month to month basis.

b.      On information and belief, Chesapeake Exploration has not sold and does not sell Chesapeake Exploration's share of oil or liquid or liquefiable hydrocarbons produced from the relevant lands to a purchaser that is not an affiliate (as defined in the relevant leases) of Chesapeake Exploration.

c.      On information and belief, Chesapeake Exploration has not sold and does not sell Chesapeake Exploration's share of oil or liquid or liquefiable hydrocarbons produced from the relevant lands at a price arrived at by arms-length dealing between the Chesapeake Exploration and the purchaser(s).

d.      On information and belief, the price paid by the purchaser(s) for Chesapeake Exploration's share of oil or liquid or liquefiable hydrocarbons produced from the relevant lands has not been and is not now the only consideration for such sale.

58.    Chesapeake has not paid the Winscott owners, Rall Properties, and Trinity Valley royalty payments for oil or liquid or liquefiable hydrocarbons produced from the relevant lands using a market price calculated from "the arithmetical average of the two highest prices then being paid for such substance or a substance of like kind and quality in Tarrant County, State of Texas by purchasers regularly engaged in the purchase of such substance."

59.    To the extent Chesapeake has paid the Winscott owners, Rall Properties, and Trinity Valley royalty payments for oil or liquid or liquefiable hydrocarbons produced from the relevant lands using a market price calculated from "the arithmetical average of the two highest prices then being paid for such substance or a substance of like kind and quality in Tarrant

County, State of Texas by purchasers regularly engaged in the purchase of such substance," Chesapeake has failed to adjust such prices to eliminate deductions forbidden in the relevant leases.

60.     Chesapeake's failure to pay royalties for oil or liquid or liquefiable hydrocarbons produced from the relevant lands as described above violates the relevant leases.

61.     Chesapeake's failure to pay overrides for oil or liquid or liquefiable hydrocarbons produced from the relevant lands on the same basis breaches the relevant assignments.

**Market value for sales of gas**

62.     The Winscott leases, the Rall Properties lease, and the Trinity Valley lease each establish a method to calculate market value of gas produced from the relevant lands for the purpose of computing royalties. In all cases, these leases provide that, if actual sales of gas produced from the relevant lands meet certain criteria, those actual sales will set the market value (for the purpose of computing royalties).

63.     If the actual sales fail to meet the listed criteria, the Winscott leases, the Rall Properties lease, and the Trinity Valley lease each set the market value (for the purpose of computing royalties) of gas produced from the relevant lands by calculating "the arithmetical average of the two highest prices then being paid by purchasers in Tarrant County, State of Texas for gas of substantially equivalent quality and quantity as the gas being produced from the Leased Premises."

64.     Where the arithmetical average method of calculating market value applies to the sale of gas produced from the relevant lands, the Winscott leases, the Rall Properties lease, and the Trinity Valley lease each provide that, to the extent "prices used in determining market value . . . are under contracts or arrangements making deduction for any of the expenses of production,

gathering, dehydration, compressing, transporting, manufacturing, processing, treating or marketing of such oil, liquid or liquefiable hydrocarbons or gas, then such deduction shall be added back into the prices for the purposes of calculating market value for the payment of royalties to the end that Lessor's royalty shall not be charged directly or indirectly with any such expenses, except as expressly provided in this Lease."

65.     On information and belief, none of Chesapeake Exploration's actual sales of gas produced from the relevant lands meet the criteria listed in the Winscott leases, the Rall Properties lease, and the Trinity Valley lease for deeming the sale price the market value (for the purpose of computing royalties).

a.      On information and belief, Chesapeake Exploration has not sold and does not sell Chesapeake Exploration's share of gas produced from the relevant lands under a bona fide gas sales contract.

b.      On information and belief, Chesapeake Exploration has not sold and does not sell Chesapeake Exploration's share of gas produced from the relevant lands under a contract providing for the purchase of such gas by a purchaser which is not an affiliate (as defined in the relevant leases) of Chesapeake Exploration.

c.      On information and belief, Chesapeake Exploration has not sold and does not sell Chesapeake Exploration's share of gas produced from the relevant lands under a contract where the only consideration for such sale is the price of the gas provided for in such contract (with no provision for advance payment).

d.      On information and belief, Chesapeake Exploration has sold and now sells Chesapeake Exploration's share of gas produced from the relevant lands under a contract that has a term of more than five years.

e.      On information and belief, Chesapeake Exploration has not sold and does not sell Chesapeake Exploration's share of gas produced from the relevant lands under a contract that contains provisions for upward redetermination of price not less often than annually on a basis to insure that the price for such gas will always be reasonably equivalent to, and not less than, the then current market value of gas similarly sold or used in the area of the relevant lands.

66.      Chesapeake has not paid the Winscott owners, Rall Properties, and Trinity Valley royalty payments for gas produced from the relevant lands using a market price calculated from "the arithmetical average of the two highest prices then being paid by purchasers in Tarrant County, State of Texas for gas of substantially equivalent quality and quantity as the gas being produced from the Leased Premises."

67.      To the extent Chesapeake has paid the Winscott owners, Rall Properties, and Trinity Valley royalty payments for gas produced from the relevant lands using a market price calculated from "the arithmetical average of the two highest prices then being paid for such substance or a substance of like kind and quality in Tarrant County, State of Texas by purchasers regularly engaged in the purchase of such substance," Chesapeake has failed to adjust such prices to eliminate deductions forbidden in the relevant leases.

68.      Chesapeake's failure to pay royalties for gas produced from the relevant lands as described above violates the relevant leases.

69.      Chesapeake's failure to pay overrides for gas produced from the relevant lands on the same basis breached the relevant assignments.

**Access to information**

70.     The Winscott leases, the Rall Properties lease, and the Trinity Valley lease each provide the lessors "the right at all reasonable times personally or by representative, to inspect the books, accounts, contracts, records and data of Lessee pertaining to the development, production, treatment, storage, transportation, sale and marketing of oil, gas or any components thereof and associated minerals produced from the Leased Premises, on an annual basis." Further, the Winscott leases, the Rall Properties lease, and the Trinity Valley lease each give the lessors audit rights over "Lessee's accounts, contracts, books and records pertaining to the Leased Premises for the purpose of ascertaining the amount of production and sales and the cost of manufacturing and extracting any and all substances covered by this agreement."

71.     Similarly, the relevant assignments provide Fine Line and Rall Oil & Gas "full access" to the relevant records relating to all production from the relevant lands.

72.     Despite repeated requests by plaintiffs for, among other permitted materials, relevant contracts and related records and data pertaining to the production, transportation, sale, and marketing of the production from the relevant lands, Chesapeake has refused to comply with its obligation to provide these materials to plaintiffs. Chesapeake's refusal to provide the requested information not only breaches the relevant leases and assignments but also suggests that Chesapeake recognizes that its arrangements (described more fully below) do not comport with its obligations under the relevant leases and assignments.

**Chesapeake's attempts to avoid paying proper royalties and overrides**

73.     Chesapeake Energy Corporation is the parent company of, and holds the controlling interest in, Chesapeake Energy Marketing, Inc. (CEMI), Chesapeake Midstream

Partners, n/k/a Access Midstream Partners (CMP),[1] Chesapeake Exploration, and Chesapeake Operating.

74.    On information and belief, Chesapeake does business with two Chesapeake-family affiliates, CEMI and CMP, in connection with the above-described leases.

75.    CEMI purchases natural gas—including, on information and belief, natural gas produced from the relevant lands—at the wellhead from Chesapeake and sells it to third parties downstream.

76.    CMP provides gas-gathering services—including, on information and belief, such services in connection with production from the relevant lands—for Chesapeake.

77.    Chesapeake uses its contracts with its affiliates, CEMI and CMP, to suppress the prices on which it pays royalties and overrides to plaintiffs.

78.    In its transactions with CEMI, Chesapeake imbeds into the sales price received by Chesapeake at the wellhead the same costs (i.e., "expenses of production, gathering, dehydration, compression, transportation, manufacturing, processing, treating, or marketing") that the relevant leases and assignments forbid Chesapeake from deducting against royalty and override payments.

79.    CEMI pays Chesapeake the amount CEMI obtains in downstream sales less the costs incurred to bring the gas to market. And Chesapeake pays royalties and overrides to plaintiffs based on the price obtained in the CEMI/Chesapeake transaction.

80.    Chesapeake's payment of royalties and overrides on the basis of this artificial market value measurement breaches the relevant leases and assignments.

---

[1] In June 2012, Chesapeake Energy announced it would sell its midstream assets, which include its holdings in CMP and some gathering and processing assets of CMP.

81.     For example, among other criteria, the relevant leases require that gas must be sold "under a bona fide gas sales contract providing for the purchase of such gas by a purchaser which is not an affiliate of [Chesapeake Exploration]" in order for the particular sale of gas to set the particular market value (for the purpose of computing royalties). Similarly, the relevant leases require that oil or liquid or liquefiable hydrocarbons must be sold "to a purchaser that is not an affiliate of [Chesapeake Exploration] at a price arrived at by arms length dealing between [Chesapeake Exploration] and such purchaser" in order for the actual sale of oil or liquid or liquefiable hydrocarbons to set the market value (for the purpose of computing royalties).

82.     As the CEMI/Chesapeake gas sale transactions do not meet the criteria set out in the relevant leases, Chesapeake should have paid royalties on gas produced from the relevant lands by calculating "the arithmetical average of the two highest prices then being paid by purchasers in Tarrant County, State of Texas for gas of substantially equivalent quality and quantity as the gas being produced from the Leased Premises." Similarly, because the oil of liquid or liquefiable hydrocarbon sales do not meet the certain criteria set out in the relevant leases Chesapeake should have paid royalties on oil or liquid or liquefiable hydrocarbons produced from the relevant lands by calculating "the arithmetical average of the two highest prices then being paid for such substance or a substance of like kind and quality in Tarrant County, State of Texas by purchasers regularly engaged in the purchase of such substance."

83.     On information and belief, Chesapeake employs CMP to perform gas-gathering and related midstream services for the production on the relevant land.

84.     On information and belief, Chesapeake imposes the costs of such services on the price paid to plaintiffs under the relevant leases and assignments.

85.     The imposition of such charges on royalties and overrides paid to plaintiffs breaches the relevant leases and assignments.

**Natural gas liquids and gas volumes**

86.     On information and belief, production from the relevant leases contains natural gas liquids, yet Chesapeake has failed to pay royalties and overrides on natural gas liquids associated with production from the relevant lands. Chesapeake may use its affiliates and their contracts in order not to pay or underpay royalties and overrides on natural gas liquids associated with production from the relevant lands. By whichever means, Chesapeake has failed to pay royalties and overrides on most or all such liquids.

87.     On information and belief, Chesapeake has failed to account for and pay royalties and overrides on all gas volumes and associated natural gas liquids associated with production from the relevant lands. Chesapeake's volume deficiencies may result from inaccurate internal accounting or from affiliated transactions with CEMI and/or CMP (or other affiliates). By whichever means, Chesapeake has failed to account for and pay royalties and overrides on all such volumes.

88.     Chesapeake cannot avoid its natural gas liquid payment obligations, whether by sham transactions with its affiliates CEMI and CMP or by other means. And it cannot avoid its obligations to pay on all volumes, whether by internally failing to monitor or account for all gas and natural gas liquid productions and sales, by sham transactions with its affiliates CEMI and CMP, or by other means.

**Proper party**

89.     The Winscott leases, the Rall Properties lease, and the Trinity Valley lease each provide that Chesapeake's rights under the relevant leases "may not be assigned in whole or in

part without the prior written consent of Lessor, which may be unreasonably withheld." The relevant leases further provide that any "assignment . . . made without the written consent of Lessor first had and obtained shall be void." Similarly, the relevant assignments provide Fine Line and Rall Oil & Gas the same ability to prevent subsequent assignments of the assignee's rights.

90.     The Winscott owners, Rall Properties, and Trinity Valley have not consented to any assignment of the relevant leases to entities other than Chesapeake. Similarly, Fine Line and Rall Oil & Gas have not consented to any assignment of the relevant assignee's rights to entities other than Chesapeake.

91.     The Winscott owners, Rall Properties, and Trinity Valley have contractual relationships under the relevant leases only with Chesapeake. Similarly, Fine Line and Rall Oil & Gas have contractual relationships under the relevant assignments only with Chesapeake.

92.     On information and belief, Chesapeake as lessee and operator conducts all royalty and override payment and royalty and override administration for the relevant leases. On information and belief, Chesapeake has rights of reimbursement from any other parties potentially involved in the relevant leases.

**Tolling and limitations**

93.     Effective April 20, 2012, Chesapeake Energy Corporation, Chesapeake Exploration, Chesapeake Operating, CEMI, CMP, and other Chesapeake affiliates agreed "to toll and suspend the running of time of any and all statutes of limitations or statutes of repose and any and all defenses related to the passage of time, whether legal or equitable" for the claims presented in this action.

94.     The above-described tolling agreement is valid and effective and has not expired as of the date of suit. And the tolling agreement runs in favor of all named plaintiffs.

95.     In the alternative, defendants are estopped from asserting limitations as a defense because by words and conduct defendants induced plaintiffs to delay filing claims beyond the applicable statute of limitations.

96.     In the alternative, defendants by fraud induced plaintiffs to delay filing claims beyond the applicable statute of limitations.

## V.     CONDITIONS PRECEDENT

97.     All conditions precedent to plaintiffs' claim for relief either have been performed or have occurred.

## VI.     CAUSES OF ACTION

**Count 1—Breach of contract (express and/or implied covenants)**

98.     Plaintiffs incorporate by reference all preceding paragraphs.

99.     The relevant leases and assignments are valid, enforceable contracts.

100.     Plaintiffs are the proper parties to sue to enforce the terms of the relevant leases and assignments. Plaintiffs have performed, or have substantially performed, any and all necessary conditions precedent, dependent obligations, and/or dependent covenants owed under the relevant leases and assignments. Plaintiffs are, and have been, entitled to Chesapeake's performance of its obligations under the relevant leases and assignments.

101.     Chesapeake has materially breached its contractual obligations to plaintiffs, including the express terms set out above and/or the implied covenant to market the plaintiffs' minerals in good faith. Examples of such breaches include the following:

a.      Deducting certain production and post-production expenses from the royalties to which plaintiffs are and have been entitled;

b.      Paying the Winscott owners, Rall Properties, and Trinity Valley payments that reflect, either directly or indirectly, "any part of the costs or expenses of production, gathering, dehydration, compression, transportation, manufacturing, processing, treating, or marketing of the oil or gas or components thereof or associated minerals;"

c.      Imposing, directly or indirectly, on the Winscott owners, Rall Properties, and Trinity Valley more than $0.75 per Mcf in costs of treating, dehydrating, compressing, processing, and transporting;

d.      Paying the Winscott owners, Rall Properties, and Trinity Valley less than the lessor's full royalty share of any natural gas liquid or residue gas produced from the relevant lands;

e.      Imposing on the Winscott owners, Rall Properties, and Trinity Valley the costs of processing/separation processes used on the production from the respective lands;

f.      Imposing, directly or indirectly, on both Fine Line's and Rall Oil & Gas's overriding royalty payments charges for "exploration, development, transportation, compression, treating, processing, marketing and operating expenses and all other liabilities, liens and encumbrances;"

g.      Failing to pay the Winscott owners, Rall Properties, and Trinity Valley royalty payments for oil or liquid or liquefiable hydrocarbons produced from the relevant lands using a market price calculated from "the arithmetical average of the two highest prices then being paid for such substance or a substance of like kind and quality in

Tarrant County, State of Texas by purchasers regularly engaged in the purchase of such substance;"

h.      To the extent Chesapeake has paid the Winscott owners, Rall Properties, and Trinity Valley royalty payments for oil or liquid or liquefiable hydrocarbons produced from the relevant lands using a market price calculated from "the arithmetical average of the two highest prices then being paid for such substance or a substance of like kind and quality in Tarrant County, State of Texas by purchasers regularly engaged in the purchase of such substance," failing to adjust such prices to eliminate deductions forbidden in the relevant leases.

i.      Failing to pay Fine Line and Rall Oil & Gas overrides for oil or liquid or liquefiable hydrocarbons produced from the relevant lands on the same basis;

j.      Failing to pay the Winscott owners, Rall Properties, and Trinity Valley royalty payments for gas produced from the relevant lands using a market price calculated from "the arithmetical average of the two highest prices then being paid by purchasers in Tarrant County, State of Texas for gas of substantially equivalent quality and quantity as the gas being produced from the Leased Premises;"

k.      To the extent Chesapeake has paid the Winscott owners, Rall Properties, and Trinity Valley royalty payments for gas produced from the relevant lands using a market price calculated from "the arithmetical average of the two highest prices then being paid for such substance or a substance of like kind and quality in Tarrant County, State of Texas by purchasers regularly engaged in the purchase of such substance," failing to adjust such prices to eliminate deductions forbidden in the relevant leases.

l.      Failing to pay Fine Line and Rall Oil & Gas overrides for gas produced from the relevant lands on the same basis;

m.      Refusing to provide plaintiffs, among other materials, relevant contracts and related records and data pertaining to the production, transportation, sale, and marketing of the production from the relevant lands;

n.      Paying royalties and overrides to plaintiffs based on the price obtained in the CEMI/Chesapeake transaction rather than as provided under the relevant leases and assignments;

o.      Imposing on plaintiffs the costs of services from CMP; and

p.      Failing to pay royalties and overrides on most or all of the natural gas liquids associated with production from the relevant lands.

102.    Such breaches of contractual obligations, singularly and/or in any combination thereof, have caused financial injuries to plaintiffs and/or benefits to Chesapeake, for which plaintiffs now seek all expectation-interest damages, consequential and incidental damages, lost profits, out-of-pocket losses, and future damages.

## Count 2—Accounting

103.    Plaintiffs incorporate by reference all preceding paragraphs.

104.    The relevant leases and assignments impose on Chesapeake the duty to account to plaintiffs with respect to royalty and override payments.

105.    In the alternative, damages alone will not compensate plaintiffs for their collective loss of royalty and override payments consistent with the lease; the facts and accounts presented are so complex that adequate relief may not be obtained at law; standard discovery procedures, such as requests for production, interrogatories, and subpoena duces tecum, may prove

inadequate to provide plaintiffs with the information sought regarding royalty and override payments; and, under the relevant leases and assignments, plaintiffs and Chesapeake have a contractual or fiduciary relationship with respect to royalty and override payments.

106. Plaintiffs have strictly complied with the terms of the lease and/or have not committed a material breach thereof. Further, plaintiffs come to the Court with clean hands.

107. Plaintiffs, therefore, seek an accounting, whether under the relevant leases and assignments or, in the alternative, in equity, as follows:

a. For past and present royalties on adequate market value, volumes, and substances, at appropriate prices, and without inappropriate deductions for certain production costs and post-production costs;

b. For future periodic accountings of Chesapeake's production and sales of natural gas and of liquids; and

c. For future royalties determined by adequate market value, volumes, and substances, at appropriate prices, and without inappropriate deductions for certain production costs and post-production costs.

**Count 3—Declaratory judgment**

108. Plaintiffs incorporate by reference all preceding paragraphs.

109. Chesapeake has acted contrary to its obligations under the relevant leases and assignments. A substantial controversy of sufficient immediacy and reality exists between plaintiffs and Chesapeake so as to warrant this Court's declaration on the matters presented. Plaintiffs and Chesapeake hold adverse legal interests.

110. Plaintiffs seek a declaration as to the following rights and legal relations:

a.      That Chesapeake cannot deduct certain production and post-production expenses from the royalties and overrides to which plaintiffs are and have been entitled;

b.      That Chesapeake cannot pay the Winscott owners, Rall Properties, and Trinity Valley payments that reflect, either directly or indirectly, "any part of the costs or expenses of production, gathering, dehydration, compression, transportation, manufacturing, processing, treating, or marketing of the oil or gas or components thereof or associated minerals;"

c.      That, to the extent Chesapeake can impose any costs on plaintiffs' payments, Chesapeake cannot impose, directly or indirectly, on the Winscott owners, Rall Properties, and Trinity Valley more than $0.75 per Mcf in costs of treating, dehydrating, compressing, processing, and transporting;

d.      That Chesapeake cannot pay the Winscott owners, Rall Properties, and Trinity Valley less than the lessor's full royalty share of any natural gas liquid or residue gas produced from the relevant lands;

e.      That Chesapeake cannot impose on the Winscott owners, Rall Properties, and Trinity Valley the costs of processing/separation processes used on the production from the respective lands;

f.      That Chesapeake cannot impose, directly or indirectly, on both Fine Line's and Rall Oil & Gas's overriding royalty payments charges for "exploration, development, transportation, compression, treating, processing, marketing and operating expenses and all other liabilities, liens and encumbrances;"

g.      That Chesapeake must pay the Winscott owners, Rall Properties, and Trinity Valley royalty payments for oil or liquid or liquefiable hydrocarbons produced

from the relevant lands using a market price calculated from "the arithmetical average of the two highest prices then being paid for such substance or a substance of like kind and quality in Tarrant County, State of Texas by purchasers regularly engaged in the purchase of such substance;"

h.      That, when Chesapeake pays the Winscott owners, Rall Properties, and Trinity Valley royalty payments for oil or liquid or liquefiable hydrocarbons produced from the relevant lands using a market price calculated from "the arithmetical average of the two highest prices then being paid for such substance or a substance of like kind and quality in Tarrant County, State of Texas by purchasers regularly engaged in the purchase of such substance," Chesapeake must adjust such prices to eliminate deductions forbidden in the relevant leases.

i.      That Chesapeake must pay Fine Line and Rall Oil & Gas overrides for oil or liquid or liquefiable hydrocarbons produced from the relevant lands on the same basis;

j.      That Chesapeake must pay the Winscott owners, Rall Properties, and Trinity Valley royalty payments for gas produced from the relevant lands using a market price calculated from "the arithmetical average of the two highest prices then being paid by purchasers in Tarrant County, State of Texas for gas of substantially equivalent quality and quantity as the gas being produced from the Leased Premises;"

k.      That, when Chesapeake pays the Winscott owners, Rall Properties, and Trinity Valley royalty payments for gas produced from the relevant lands using a market price calculated from "the arithmetical average of the two highest prices then being paid for such substance or a substance of like kind and quality in Tarrant County, State of

Texas by purchasers regularly engaged in the purchase of such substance," Chesapeake must adjust such prices to eliminate deductions forbidden in the relevant leases.

l.      That Chesapeake must pay Fine Line and Rall Oil & Gas overrides for gas produced from the relevant lands on the same basis;

m.      That Chesapeake must provide plaintiffs, among other materials, relevant contracts and related records and data pertaining to the production, transportation, sale, and marketing of the production from the relevant lands;

n.      That Chesapeake cannot pay royalties and overrides to plaintiffs based on the price obtained in the CEMI/Chesapeake transaction rather than as provided under the relevant leases and assignments;

o.      That Chesapeake cannot impose on plaintiffs the costs of services from CMP; and

p.      That Chesapeake must pay royalties and overrides on all of the natural gas liquids associated with production from the relevant lands.

## Count 4—Attorney's fees

111.    Plaintiffs incorporate by reference all preceding paragraphs.

112.    As a result of Chesapeake's actions and the need to protect their interests, plaintiffs have retained the law firm of Susman Godfrey LLP to represent plaintiffs in this action. Plaintiffs have agreed to pay the law firm of Susman Godfrey LLP's fees.

113.    Plaintiffs seek recovery of all reasonable and necessary attorney's fees and expenses pursuant to Chapters 37 and/or 38 of the Texas Civil Practices and Remedies Code.

## VII.    REQUEST FOR JURY TRIAL

114.    Plaintiffs request a jury trial on all issues for which a jury trial is permissible.

## VIII.  PRAYER

115.    Plaintiffs pray that Chesapeake be cited to appear and answer herein and that, upon a final hearing or trial, plaintiffs have and recover judgment from Chesapeake as follows:

      a.    Damages caused by Chesapeake's breach of the relevant leases and assignments in an amount to be proven at trial but exceeding $75,000;

      b.    An accounting as described above;

      c.    A declaration as described above;

      d.    Reasonable and necessary attorney's fees;

      e.    Pre- and post-judgment interest according to law;

      f.    All costs of suit; and

      g.    All such other and further relief, both general and special, at law or in equity, to which plaintiffs may show themselves justly to be entitled and for which it will ever pray.

Respectfully submitted,

Daniel H. Charest
State Bar No. 24057803
Warren T. Burns
State Bar No. 24053119
Katherine L.I. Hacker
State Bar No. 24074338
SUSMAN GODFREY LLP
901 Main Street, Suite 5100
Dallas, Texas 75202
Telephone: (214) 754-1900
Facsimile: (214) 754-1933
dcharest@susmangodfrey.com
wburns@susmangodfrey.com
khacker@susmangodfrey.com

Attorneys for Plaintiffs

JS 44   (Rev. 09/11)

# CIVIL COVER SHEET

The JS 44 civil coversheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States inSeptember 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet.  *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

| I. (a)  PLAINTIFFS | DEFENDANTS |
|---|---|
| TRINITY VALLEY SCHOOL, ET AL. | CHESAPEAKE OPERATING, INC., ET AL. |

**(b)**  County of Residence of First Listed Plaintiff   TARRANT
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant   OKLAHOMA COUNTY,OK.
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)**  Attorneys *(Firm Name, Address, and Telephone Number)*
DANIEL H. CHAREST, SUSMAN GODFREY LLP
901 MAIN ST., STE 5100, DALLAS, TEXAS 75202
214-754-1900

Attorneys *(If Known)*

## II.  BASIS OF JURISDICTION   *(Place an "X" in One Box Only)*

☐ 1  U.S. Government Plaintiff

☐ 3  Federal Question
*(U.S. Government Not a Party)*

☐ 2  U.S. Government Defendant

☒ 4  Diversity
*(Indicate Citizenship of Parties in Item III)*

## III.  CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff)*
*(For Diversity Cases Only)* and One Box for Defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☒ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☒ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV.  NATURE OF SUIT   *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 625 Drug Related Seizure of Property 21 USC 881 | ☐ 422 Appeal 28 USC 158 | ☐ 375 False Claims Act |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 365 Personal Injury - | ☐ 690 Other | ☐ 423 Withdrawal | ☐ 400 State Reapportionment |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Product Liability | | 28 USC 157 | ☐ 410 Antitrust |
| ☐ 140 Negotiable Instrument | Liability | ☐ 367 Health Care/ | | | ☐ 430 Banks and Banking |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Pharmaceutical | | **PROPERTY RIGHTS** | ☐ 450 Commerce |
| & Enforcement of Judgment | Slander | Personal Injury | | ☐ 820 Copyrights | ☐ 460 Deportation |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Product Liability | | ☐ 830 Patent | ☐ 470 Racketeer Influenced and |
| ☐ 152 Recovery of Defaulted | Liability | ☐ 368 Asbestos Personal | | ☐ 840 Trademark | Corrupt Organizations |
| Student Loans | ☐ 340 Marine | Injury Product | | | ☐ 480 Consumer Credit |
| (Excl. Veterans) | ☐ 345 Marine Product | Liability | **LABOR** | **SOCIAL SECURITY** | ☐ 490 Cable/Sat TV |
| ☐ 153 Recovery of Overpayment | Liability | **PERSONAL PROPERTY** | ☐ 710 Fair Labor Standards | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 370 Other Fraud | Act | ☐ 862 Black Lung (923) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | ☐ 371 Truth in Lending | ☐ 720 Labor/Mgmt. Relations | ☐ 863 DIWC/DIWW (405(g)) | ☐ 890 Other Statutory Actions |
| ☒ 190 Other Contract | Product Liability | ☐ 380 Other Personal | ☐ 740 Railway Labor Act | ☐ 864 SSID Title XVI | ☐ 891 Agricultural Acts |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Property Damage | ☐ 751 Family and Medical | ☐ 865 RSI (405(g)) | ☐ 893 Environmental Matters |
| ☐ 196 Franchise | Injury | ☐ 385 Property Damage | Leave Act | | ☐ 895 Freedom of Information |
| | ☐ 362 Personal Injury - | Product Liability | ☐ 790 Other Labor Litigation | | Act |
| | Med. Malpractice | | ☐ 791 Empl. Ret. Inc. | | ☐ 896 Arbitration |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | Security Act | **FEDERAL TAX SUITS** | ☐ 899 Administrative Procedure |
| ☐ 210 Land Condemnation | ☐ 440 Other Civil Rights | ☐ 510 Motions to Vacate | | ☐ 870 Taxes (U.S. Plaintiff | Act/Review or Appeal of |
| ☐ 220 Foreclosure | ☐ 441 Voting | Sentence | | or Defendant) | Agency Decision |
| ☐ 230 Rent Lease & Ejectment | ☐ 442 Employment | **Habeas Corpus:** | | ☐ 871 IRS—Third Party | ☐ 950 Constitutionality of |
| ☐ 240 Torts to Land | ☐ 443 Housing/ | ☐ 530 General | | 26 USC 7609 | State Statutes |
| ☐ 245 Tort Product Liability | Accommodations | ☐ 535 Death Penalty | **IMMIGRATION** | | |
| ☐ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | ☐ 462 Naturalization Application | | |
| | Employment | ☐ 550 Civil Rights | ☐ 463 Habeas Corpus - | | |
| | ☐ 446 Amer. w/Disabilities - | ☐ 555 Prison Condition | Alien Detainee | | |
| | Other | ☐ 560 Civil Detainee - | (Prisoner Petition) | | |
| | ☐ 448 Education | Conditions of | ☐ 465 Other Immigration | | |
| | | Confinement | Actions | | |

## V.  ORIGIN   *(Place an "X" in One Box Only)*

☒ 1  Original Proceeding   ☐ 2  Removed from State Court   ☐ 3  Remanded from Appellate Court   ☐ 4  Reinstated or Reopened   ☐ 5  Transferred from another district *(specify)*   ☐ 6  Multidistrict Litigation

## VI.  CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
28 USC § 1332
Brief description of cause:
Oil and Gas royalty underpayments

## VII.  REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23

DEMAND $

CHECK YES only if demanded in complaint:
JURY DEMAND:   ☒ Yes   ☐ No

## VIII.  RELATED CASE(S) PENDING OR CLOSED:   *(See instructions)*

JUDGE

DOCKET NUMBER

DATE
03/13/2013

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT #   _____   AMOUNT   _____   APPLYING IFP   _____   JUDGE   _____   MAG. JUDGE   _____

JS 44 Reverse  (Rev. 09/11)

## INSTRUCTIONS FOR ATTORNEYS COMPLETING CIVIL COVER SHEET FORM JS 44

### Authority For Civil Cover Sheet

The JS 44 civil cover sheet and the information contained herein neither replaces nor supplements the filings and service of pleading or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. Consequently, a civil cover sheet is submitted to the Clerk of Court for each civil complaint filed. The attorney filing a case should complete the form as follows:

**I.**     **(a) Plaintiffs-Defendants.** Enter names (last, first, middle initial) of plaintiff and defendant. If the plaintiff or defendant is a government agency, use only the full name or standard abbreviations. If the plaintiff or defendant is an official within a government agency, identify first the agency and then the official, giving both name and title.

(b) County of Residence. For each civil case filed, except U.S. plaintiff cases, enter the name of the county where the first listed plaintiff resides at the time of filing. In U.S. plaintiff cases, enter the name of the county in which the first listed defendant resides at the time of filing. (NOTE: In land condemnation cases, the county of residence of the "defendant" is the location of the tract of land involved.)

(c) Attorneys. Enter the firm name, address, telephone number, and attorney of record. If there are several attorneys, list them on an attachment, noting in this section "(see attachment)".

**II.**     **Jurisdiction.** The basis of jurisdiction is set forth under Rule 8(a), F.R.CP., which requires that jurisdictions be shown in pleadings. Place an "X" in one of the boxes. If there is more than one basis of jurisdiction, precedence is given in the order shown below.

United States plaintiff. (1) Jurisdiction based on 28 U.S.C. 1345 and 1348. Suits by agencies and officers of the United States are included here.

United States defendant. (2) When the plaintiff is suing the United States, its officers or agencies, place an "X" in this box.

Federal question. (3) This refers to suits under 28 U.S.C. 1331, where jurisdiction arises under the Constitution of the Unite d States, an amendment to the Constitution, an act of Congress or a treaty of the United States. In cases where the U.S. is a party, the U.S. plaintiff or defendant code takes precedence, and box 1 or 2 should be marked.

Diversity of citizenship. (4) This refers to suits under 28 U.S.C. 1332, where parties are citizens of different states. When Box 4 is checked, the citizenship of the different parties must be checked. (See Section III below; federal question actions take precedence over diversity cases.)

**III.**     **Residence (citizenship) of Principal Parties.** This section of the JS 44 is to be completed if diversity of citizenship was indicated above. Mark this section for each principal party.

**IV.**     **Nature of Suit.** Place an "X" in the appropriate box. If the nature of suit cannot be determined, be sure the cause of action, in Section VI below, is sufficient to enable the deputy clerk or the statistical clerks in the Administrative Office to determine the nature of suit. If the cause fits more than one nature of suit, select the most definitive.

**V.**     **Origin.** Place an "X" in one of the seven boxes.

Original Proceedings. (1) Cases which originate in the United States district courts.

Removed from State Court. (2) Proceedings initiated in state courts may be removed to the district courts under Title 28 U.S.C., Section 1441. When the petition for removal is granted, check this box.

Remanded from Appellate Court. (3) Check this box for cases remanded to the district court for further action. Use the date of remand as the filing date.

Reinstated or Reopened. (4) Check this box for cases reinstated or reopened in the district court. Use the reopening date as the filing date.

Transferred from Another District. (5) For cases transferred under Title 28 U.S.C. Section 1404(a). Do not use this for within district transfers or multidistrict litigation transfers.

Multidistrict Litigation. (6) Check this box when a multidistrict case is transferred into the district under authority of Title 28 U.S.C. Section 1407. When this box is checked, do not check (5) above.

Appeal to District Judge from Magistrate Judgment. (7) Check this box for an appeal from a magistrate judge's decision.

**VI.**     **Cause of Action.** Report the civil statute directly related to the cause of action and give a brief description of the cause. **Do not cite jurisdictional statutes unless diversity.**     Example:     U.S. Civil Statute: 47 USC 553
Brief Description: Unauthorized reception of cable service

**VII.**     **Requested in Complaint.** Class Action. Place an "X" in this box if you are filing a class action under Rule 23, F.R.Cv.P.

Demand. In this space enter the dollar amount (in thousands of dollars) being demanded or indicate other demand such as a preliminary injunction.

Jury Demand. Check the appropriate box to indicate whether or not a jury is being demanded.

**VIII.**     **Related Cases.** This section of the JS 44 is used to reference cases that are related to this filing, if any. If a realted case exists, whether pending or closed, insert the docket numbers and the corresponding judge names for such cases. A case is "realted" to this filing if the case: (1) involves some or all of the same parties and is based on the same or similar claim; (2) involves the same property, transaction, or event; (3) involves substantially similar issues of law and fact; and/or (4) involves the same estate in a bankruptcy appeal.

**Date and Attorney Signature.** Date and sign the civil cover sheet.