IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| TRINITY VALLEY SCHOOL, et al. | § | |
| | § | |
| Plaintiffs, | § | |
| | § | Civil Action No. 3:13-cv-01082-K |
| v. | § | |
| | § | |
| CHESAPEAKE OPERATING, INC., | § | JURY TRIAL DEMANDED |
| et al. | § | |
| | § | |
| Defendants. | § | |

## MEMORANDUM OPINION AND ORDER

Before the Court are (1) Plaintiffs' Motion for Partial Summary Judgment (Doc. No. 50); (2) Defendants' Motion for Partial Summary Judgment (Doc. No. 52); (3) Defendants' Motion to Strike the Fourth Report of Plaintiffs' Expert Richard Lonquist, or Alternatively, for a Continuance of the Trial Date (Doc. No. 61); (4) Defendants' Motion to Exclude the Testimony and Opinions of Plaintiffs' Expert Richard Lonquist Relating to Plaintiffs' Royalty Pricing Claim (Doc. No. 65); (5) Defendants' Motion to Exclude the Testimony and Opinions of Plaintiffs' Expert Jane Kidd Relating to Economic Benefit (Doc. No. 68); and (6) Defendants' Motion for Leave to File a Sur-Reply, or, Alternatively, Motion to Strike New Authority and Related Argument (Doc. No. 99).

The Court **GRANTS** Plaintiffs' Motion for Partial Summary Judgment (Doc. No. 50). Defendants' Motion for Partial Summary Judgment (Doc. No. 52) is **GRANTED in part and DENIED in part**. The Court **GRANTS** summary

1

judgment as to Plaintiffs' accounting and pricing claims only because Plaintiffs agree these claims should be dismissed.  The Court **DENIES** summary judgment as to all other claims in Defendants' Motion for Partial Summary Judgment.

Defendants' Motion to Strike the Fourth Report of Plaintiffs' Expert Richard Lonquist, or Alternatively, for a Continuance of the Trial Date (Doc. No. 61), Defendants' Motion to Exclude the Testimony and Opinions of Plaintiffs' Expert Richard Lonquist Relating to Plaintiffs' Royalty Pricing Claim (Doc. No. 65), and Defendants' Motion to Exclude the Testimony and Opinions of Plaintiffs' Expert Jane Kidd Relating to Economic Benefit (Doc. No. 68) are **DENIED**.  Defendants' Motion for Leave to File a Sur-Reply, or, Alternatively, Motion to Strike New Authority and Related Argument (Doc. No. 99) is **DENIED as moot**.

## I.      Factual and Procedural Background

Trinity Valley School, Rall Properties, L.P., Olive Rall Family, L.P., Rall Oil & Gas, L.P., Fine Line Diversified Ventures, L.P., Edward P. Bass, Paul B. McKinney, Mary Barnes McKinney Swift, William W. McKinney, Jr., Darcy Lee Knapp Fricks, Shelley Lynn Knapp, Sandra Gail Knapp, James Christopher Knapp, Richard Crenshaw Rall, Olive Greenwald, Jessica Simus Barr, Jason Boaz Simus, Kathleen Rall, Thomas Malcolm Rall, Raymond E. Lindamood, Raymond Ladd Lindamood, Fort Worth Academy for the Education of Children and Youth, Texas Health Harris Methodist Hospital Southwest Fort Worth, f/k/a Harris Methodist Southwest, and Texas Health Presbyterian Hospital Dallas, f/k/a Presbyterian Hospital of Dallas

(collectively "Plaintiffs") hold royalty interests and overrides under oil and gas leases and assignments for wells in Johnson County and Tarrant County, Texas. Chesapeake Exploration, L.L.C ("Chesapeake Exploration") is the lessee, and Chesapeake Operating, L.L.C. (formerly Chesapeake Operating, Inc.) ("Chesapeake Operating") is the operator of the various oil and gas properties at issue.

Plaintiffs sued Chesapeake Operating and Chesapeake Exploration (collectively "Defendants") in this Court for damages, equitable relief, declaratory relief, and attorney's fees regarding royalty and override payments. Plaintiffs now move for partial summary judgment with respect to charges deducted from royalty payments for post-production expenses in violation of the relevant leases.

## II.     Summary Judgment Standard

Summary judgment is appropriate when the pleadings, affidavits and other summary judgment evidence show that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2551 (1986). The moving party bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact. *Celotex,* 477 U.S. at 322-25, 106 S.Ct. at 2551-54. Once a movant makes a properly supported motion, the burden shifts to the nonmovant to show that summary judgment should not be granted; the nonmovant may not rest upon allegations in the pleadings, but must support the response to the motion with summary judgment evidence showing the

existence of a genuine fact issue for trial.  *Id.* at 321-25; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255-57 (1986).  An issue is genuine if the evidence is such that a reasonable jury could return a verdict in the opposing party's favor.  *Anderson*, 477 U.S. at 248.  All evidence and reasonable inferences must be viewed in the light most favorable to the nonmovant. *United States v. Diebold, Inc.,* 369 U.S. 654, 655 (1962).


### III.    Plaintiffs' Motion for Partial Summary Judgment on Deductions

Plaintiffs hold royalty and override interests under oil and gas leases, and they allege that the lessee, Chesapeake Exploration, underpaid royalty payments to Plaintiffs in violation of the relevant leases.  Plaintiffs move for partial summary judgment with respect to the alleged underpayments due to deductions.

Plaintiffs argue that the Court should apply the plain language of the leases at issue and that the leases provide an alternative method of determining market value in the event of an affiliate sale.  Plaintiffs assert that the key language in the leases sets an irreducible minimum starting point, known as the weighted average sales price ("WASP"), for the value and does not permit deductions from that price under the language of the leases.

Defendants argue that because information about the average of the two highest prices in Tarrant County was not readily available, they used a net-back calculation to value royalty, which is not a deduction from royalty.  They state that they took the downstream WASP and subtracted downstream post-production costs to derive at a

Tarrant County royalty price and that this method of calculations does not reduce the value of the royalty.

   **A.** Applicable Law

   The leases at issue indicate that they are to be governed by Texas law.  Under Texas law, "an oil and gas lease is a contract, and its terms are interpreted as such." *Tittizer v. Union Gas Corp.*, 171 S.W.3d 857, 860 (Tex. 2005).  "The question of whether a contract is ambiguous is one of law for the court to answer." *Heritage Res., Inc. v. NationsBank*, 939 S.W.2d 118, 121 (Tex. 1996).  "A contract is ambiguous when its meaning is uncertain and doubtful or is reasonably susceptible to more than one interpretation." *Id*.  "In construing an ambiguous oil and gas lease our task is to ascertain the parties' intentions as expressed in the lease." *Id*.  "To achieve this goal, [the court] examines the entire document and considers each part with every other part so that the effect and meaning of one part on any other part may be determined." *Id*.  The court "gives the terms their plain, ordinary, and generally accepted meaning unless the instrument shows that the parties used them in a technical or different sense." *Id*.  "If, after applying the pertinent rules of construction, the lease remains subject to two or more equally reasonable interpretations, Texas cases counsel that [the court] adopt[s] the interpretation more favorable to the lessor." *Yturria v. Kerr-Mcgee Oil & Gas Onshore, LLC*, 291 F. App'x 626, 631 (5th Cir. 2008).

In *Potts v. Chesapeake Exploration, L.L.C.,* the Fifth Circuit looked to the Texas Supreme Court's opinion in *Heritage Resources, Inc. v. NationsBank*, 939 S.W.2d 118 (Tex. 1996), to determine how to interpret royalty provisions under Texas law. *Potts v. Chesapeake Exploration, L.L.C.,* 760 F.3d 470, 474-75 (5th Cir. 2014). In *Heritage*, the lease language called for measurement of the market value at the point of sale, the wellhead, and the Fifth Circuit concluded that Chesapeake Exploration "could arrive at the market value at the wellhead by deducting reasonable post-production costs to deliver the gas from the wellhead to the point at which the gas was sold to unaffiliated purchasers." *Id*. In other words, Chesapeake Exploration could take the downstream sale price and deduct the post-production costs to establish the cost at the wellhead. *Id*.

**B.** Application

While there are multiple leases covering different tracts at issue in this case, Plaintiffs and Defendants agree the leases are similar. Most of the leases follow either the Trinity Valley School ("TVS") lease form or the Edward P. Bass ("EPB") lease form, with some variants to be addressed separately.

### 1. The Trinity Valley School Leases

The TVS leases permit deductions from Lessor's royalty only if the point of first sale is located more than two miles from the leased premises. Plaintiffs argue that the record establishes that all gas sales from Chesapeake Operating, as agent for Chesapeake Exploration, to Chesapeake Energy Marketing, Inc. ("Chesapeake

Marketing") occur on the leased premises – and more specifically at the wellhead. Plaintiffs argue that Defendants admit this is the case in their responses to interrogatories and in their answer. Defendants admit in their Response to Plaintiffs' Motion for Partial Summary Judgment on Deductions that there is no dispute that the point of first sales takes place at the wellhead. Accordingly, the Court finds the point of first sale is not located more than two miles from the leased premises, and therefore, deductions are not permitted on the TVS leases.

## 2. The Edward P. Bass Leases

The EPB leases allow for deductions of post-production costs, only if the post-production costs are:

> (i) charged at arms-length by an entity unaffiliated with Lessee;
> (ii) actually incurred by Lessee for the purpose of making the oil and gas produced hereunder ready for sale or use or to move such production to market; and (iii) are incurred by Lessee at a location off of the Leased Premises; provided, however, such post-production costs charged to Lessor's royalty shall never exceed $0.75 per Mcf.

Doc. No. 55-1, Pls.' App. 000003; Doc. No. 79-1, Defs.' App. 003; EPB Lease Section 4(d)(2).

Plaintiffs argue Defendants should not have deducted post-production costs because none of the three prongs is satisfied. Plaintiffs argue the first prong fails because the charge from Chesapeake Marketing to Chesapeake Operating to Chesapeake Exploration is not part of an arms-length transaction with unaffiliated entities; these Chesapeake companies involved in the transaction are all affiliated

7

entities with the lessee, Chesapeake Exploration.  Plaintiffs argue the second prong fails because the lessee, Chesapeake Exploration, does not incur any post-production costs for a sale at the wellhead.  Plaintiffs argue the third prong fails because the charge does not occur off the leased premises.

Defendants argue that they indirectly incur all post-production costs pursuant to their gas sales contract with Chesapeake Marketing.  They state this turns on the meaning of "incur." Defendants argue that although there is no dispute that Chesapeake Exploration does not pay third parties for post-production costs, nor does it deduct post-production costs from the prices at the well or in Tarrant County, post-production costs, under the sales contract with Chesapeake Marketing, are netted from the proceeds paid to Chesapeake Exploration by Chesapeake Marketing. Defendants rely on the fact that in a previous case they have stipulated that they incur post-production costs and that the Fifth Circuit restated such in its opinion. They conclude, therefore, that they incur post-production costs.

Next, Defendants argue that post-production costs are incurred downstream, off the leased premises, for services provided by unaffiliated third parties.  Defendants argue that Plaintiffs have not shown that third-party transportation and other post-production costs are not charged by unaffiliated third parties in arm's length transactions and that the record shows that charges are made by third-party downstream service providers.  They assert that if Chesapeake Marketing pays the

bills and passes the charges through to Defendants, doing so does not transform the costs into non-arm's length charges.

Both the TVS and EPB leases establish an alternate market value calculation in the event gas is sold by the lessee to an affiliate.  The leases state that if Lessee's share of gas from the leased premises is being sold by Lessee to an affiliate, the market value of the gas should be considered to be the arithmetical average of the two highest prices being paid at that time by purchasers in Tarrant County for gas of substantially equivalent quality and quantity as the gas being produced from the leased premises. Plaintiffs argue that the record establishes that Lessee is selling its share of gas from the leased premises to an affiliate and that Chesapeake Exploration, Chesapeake Operating, and Chesapeake Marketing are all affiliates.

To support their position, Plaintiffs turn to the contract under which Chesapeake Exploration, through Chesapeake Operating, sells gas to an affiliate, Chesapeake Marketing, on the leased premises.  Under the contract, Chesapeake Marketing deducts post-production expenses to calculate the price paid to Chesapeake Operating.  Plaintiffs state that the provisions of this contract between Chesapeake Exploration and Chesapeake Marketing establish five facts that control the TVS and EPB leases.

First, Plaintiffs argue that Defendants have confirmed through deposition and request for admission that Chesapeake Marketing is an affiliated entity.  Second, Plaintiffs assert that the Defendants have admitted in discovery responses,

depositions, and their pleadings that the sale from Chesapeake Operating to Chesapeake Marketing occurs at the wellhead – so neither off the leased premises nor two miles from the leased premises.   Third, Plaintiffs assert that Defendants have conceded that all sales of gas by Chesapeake Operating to Chesapeake Marketing from Tarrant County wells represent sales to buyers in Tarrant County.   Fourth, Plaintiffs argue that Defendants have said that the gas produced from the premises at issue in this case is of substantially equivalent quality or quantity.   Fifth, Plaintiffs assert Defendants confirmed that the price paid by Chesapeake Marketing to Chesapeake Operating for Tarrant County wellhead sales includes a deduction for post-production expenses.

Section 4(d)(2) of the EPB leases, which is a no-deduction provision, states the Lessor's royalty shall not bear post-production costs unless certain conditions are satisfied.   Plaintiffs state that Defendants explained in discovery that they calculated royalties by applying the no-deduction language in Section 4(d)(2) in the relevant leases.   However, Plaintiffs disagree with Defendants' application of the no-deduction provisions and note that Defendants failed to mention the top two prices in Tarrant County.   Defendants admitted in depositions that they did not attempt to determine the two highest prices in Tarrant County.

Defendants argue that even if their net-back method of calculation could be viewed as a deduction, all of the challenged deductions would qualify as deductible costs under the leases' provisions.   Defendants state the disputed post-production

10

costs stem from services provided by unaffiliated third parties in arm's length transaction for services downstream from the leased premises – such as pipeline transportation in Louisiana. However, Defendants do not cite to evidence in the record of post-production costs for pipeline transportation in Louisiana.

Defendants argue that point of valuation is Tarrant County, but that Plaintiffs want far more – they want a price in Houston, or Louisiana, or Alabama. Defendants do not cite to where Plaintiffs ask for this, and the Court does not find such evidence in the record. Defendants argue that Plaintiffs' attention to the deductions Defendants made in calculating royalties is misplaced because a net-back royalty valuation method is not a deduction from a royalty at all. Defendants incorrectly state Plaintiffs' argument. Plaintiffs argue that the conditions required for post-production costs deductions under the EPB lease are not satisfied.

The Court disagrees with Defendants arguments, and the record before the Court establishes post-production costs are not: (1) charges by an unaffiliated entity; (2) incurred by the lessee; and (3) incurred by lessee at a location off of the leased premises. The Court agrees with Plaintiffs argument and finds that the three-prong test in the EPB leases is not satisfied. Deductions of post-production costs are not permitted on the EPB leases.

### 3. The Texas Health and McKinney Leases

Plaintiffs note there are two leases that are different from the TVS and EPB leases, which Plaintiffs call non-standard leases. The Court agrees and addresses these two

11

leases separately.  Post-production deductions are also at issue for these two non-standard leases: (1) Texas Health lease and (2) McKinney lease.  As to the Texas Health lease, Plaintiffs point out that this lease contains an additional provision prohibiting deduction of post-production costs in the event of a sale by the lessee to an affiliate, making it a non-standard lease.  They state that the additional provision in an addendum entitles Texas Health to receive the higher of either (i) the market value or (ii) the price received by the Lessee affiliate.  They argue that under either prong royalties should be paid on the WASP.  In their Response to Plaintiffs' Motion for Partial Summary Judgment, Defendants state they have agreed to pay, under the Texas Health lease, royalty based on the WASP.  Therefore, the Court grants summary judgment as to no deductions for post-production costs on the Texas Health lease.

The second non-standard lease that Plaintiffs point out is the McKinney lease.  Although the McKinney lease is the first of the EPB leases, it does not contain Section 4(d)(1)(iii), by which post-production expenses get added back to the Tarrant County prices, thereby making it a non-standard lease.  Plaintiffs argue that Section 4(d)(1)(iii) was added to the later EPB leases to clarify the expected interpretation of the McKinney lease.  They assert that Section 4(d)(1)(iii), which states that Lessor's royalty shall not be charged with any deductions unless expressly provided for in the lease, confirms what should be implied in Section 4(d)(1)(ii).

Section 4(d)(ii) states that if Lessee's share of gas from the leased premises is sold by Lessee to a purchaser who is not an affiliate of Lessee, the price provided is considered the market price.  Section 4(d)(ii) also states that if Lessee's share of gas from the leased premises is sold to an affiliate, the market value of the gas is the arithmetical average of the two highest prices then being paid by purchasers in Tarrant County for gas of substantially equivalent quality and quantity.  Plaintiffs argue that even in the absence of Section 4(d)(1)(iii), the Court should interpret the McKinney lease to operate in the same manner as the EPB leases because doing so would maintain the protections of Section 4(d)(1)(ii) and such an interpretation is more favorable to the lessor.

Defendants argue that Plaintiffs are wrong and assert that the two prices that emerge from the high price inquiry would not be subject to further adjustment, absent Section 4(d)(1)(iii). Defendants assert that it is possible, and even likely, that the two highest prices to emerge from a Section 4(d)(1)(ii) inquiry would not reflect deductions for post-production costs.  They argue that as a matter of law the Market Value Average Price in Tarrant County is not subject to any upward adjustment.

The Court finds Defendants argument unpersuasive because even without the clarification provided by Section 4(d)(1)(iii), Section 4(d)(1)(ii) does not allow for deductions of post-production costs so prices would be subject to adjustment.  The Court agrees with Plaintiffs and finds the McKinney lease should be interpreted in the same way as the EPB leases. *See Yturria*, 291 Fed. Appx. at 631.

Case 3:13-cv-01082-K   Document 111   Filed 08/19/15   Page 14 of 18   PageID 2834

### 4. Weighted Average Sales Price

Plaintiffs state that because deductions are not permitted under the TVS and EPB leases, the issue is how to apply the no-deduction calculation.  Plaintiffs argue Section 4(d)(1)(ii) of the TVS and EPB leases provides the answer.  They assert that under Section 4(d)(1)(ii) of the TVS and EPB leases, because Chesapeake Exploration, the lessee, sells to Chesapeake Marketing, an affiliate, through Chesapeake Operating, the market value is the average of the two highest prices paid by purchasers in Tarrant County for gas of substantially equivalent quality and quantity, rather than the price paid by an non-affiliate.

Plaintiffs contend that Defendants made three admissions that lead to the WASP, the weighted average sales price, being the minimum market value.  First, Plaintiffs assert that Defendants conceded that sales of gas from Tarrant County wells by Chesapeake Operating to Chesapeake Marketing represent sales to purchasers in Tarrant County because Chesapeake Operating sells the gas at the wellhead.  Second, Plaintiffs argue that Defendants admitted that the gas in the purchases in Tarrant County used to calculate the market value price in WASP is of substantially equivalent quality and quantity as the gas produced from the Leased Premises.  Third, Plaintiffs also assert that Defendants admit the price paid by Chesapeake Marketing results from contracts that deduct for post-production expenses.

Plaintiffs assert that as a necessary result of these concessions, Defendants acknowledged that Section 4(d)(1)(iii) of the leases causes the WASP to serve as a

14

minimum price for the market value inquiry under the applicable leases.  Plaintiffs argue they should have been paid, at a minimum, the WASP prices without any deductions.   Instead of using those prices, Plaintiffs allege Defendants made deductions over time.

Defendants argue that the WASP is not the average of the two highest prices then being paid by purchasers in Tarrant County and that Plaintiffs want their royalty share based on non-Tarrant County downstream sales proceeds achieved by Chesapeake Marketing.  They assert that Plaintiffs rely on deposition testimony that was mis-transcribed by the court reporter to establish support that Defendants' agree that Section 4(d)(1)(iii) of the leases causes the WASP to serve as the minimum price.  Further, Defendants argue that Plaintiffs could have drafted a lease to value their royalty based on the greater of the (i) the Market Value Average Price, or (ii) the gross proceeds achieved by Chesapeake Exploration marketing affiliate, similar to the "greater of" approach in the Texas Health lease.  Defendants assert that Plaintiffs are trying to have the royalty share of their gas based on the non-Tarrant County downstream sales proceeds, which, they argue, is impermissible.

In their reply, Plaintiffs argue that the leases at issue do not set a geographical point for determining market value in the way the leases in the cases Defendants cite do.  They argue that rather than calculating market value at a geographical location, the leases set the royalty based on a reference price, the top two prices being paid by purchasers in Tarrant County.  Plaintiffs assert that they have demonstrated that the

WASP, which Defendants pay on all of their Tarrant County wells, qualifies as a reference price and that they are entitled to summary judgment on the difference between royalties Defendants paid and royalties due using the WASP as a reference price.

Although the Court agrees with Defendants that the deposition transcript of Mr. Joshua Deven Bowles was mis-transcribed and failed to include the word "if" in Mr. Bowles' response on page 91:8, the Court does not agree with Defendants' substantive arguments and finds the record establishes that Plaintiffs are attempting to enforce the contract as written, not to transform their royalty. Defendants do not cite to any place in the record establishing that Plaintiffs asked for non-Tarrant County prices. Because Chesapeake Exploration, the lessee, sells to an affiliate, Chesapeake Marketing, under Section 4(d)(1)(ii) of the TVS and EPB leases, market value is determined by the average of the highest two prices paid by purchasers in Tarrant County. Because market value is determined by a reference price, rather than a value at a geographical point, and WASP qualifies as a reference price, the Court finds that WASP establishes a minimum price for the market value inquiry.

### 5. Defendants' Affirmative Defenses

Defendants raise three affirmative defenses – quasi-estoppel, waiver, and ratification – none of which the Court finds to be persuasive. As to quasi-estoppel, Defendants argue that when Plaintiffs accepted the benefits of increased royalty payments resulting from discussions between the parties, Plaintiffs took one position

as to whether royalties were properly calculated and now Plaintiffs take a contrary position.  Defendants fail to cite to any evidence in the record establishing Plaintiffs' prior position or when Plaintiffs accepted the benefits of any increased royalty payments.  *See Ragas v. Tennessee Gas Pipeline Co.,* 136 F.3d 455, 458 (5th Cir. 1998) (a party opposing summary judgment must provide and support with evidence specific facts showing a genuine issue of material fact); *Forsyth v. Barr,* 19 F.3d 1527, 1533 (5th Cir. 1994) ("unsubstantiated assertions" are not sufficient summary judgment evidence").  As to waiver and ratification, Defendants list the elements required to establish each affirmative defense and assert a one-sentence argument that there is a fact issue as to whether Plaintiffs knowingly or intentionally surrendered a right or knowingly acquiesced to Defendants' $0.75 per Mcf deduction methodology.  Again, Defendants provide no citation to the record to establish the elements of either waiver or ratification.  The Court finds Defendants' affirmative defenses to be unpersuasive.  *See Ragas,* 136 F.3d at 458*; see Forsyth,* 19 F.3d at 1533.

I.      Conclusion

Because the conditions required to permit deductions under the TVS and EPB leases are not satisfied, deductions are not permitted.   Similarly, the non-standard leases do not permit deductions.   Therefore, the Court **GRANTS** Plaintiffs' Motion for Partial Summary Judgment on Deductions.   The Court does not address the amount of damages.

**SO ORDERED**.

Signed August 19th, 2015.


*Ed Kinkeade*
_____
ED KINKEADE
UNITED STATES DISTRICT JUDGE